**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS R. and DAWN R*., as Parents and Natural Guardians of a Minor, R.R.*, | |
| Plaintiffs, | NO. 3:06-CV-01902 |
| v. | (JUDGE CAPUTO) |
| NORTHEASTERN EDUCATIONAL INTERMEDIATE UNIT 19, SUSAN COMERFORD WZOREK, THE SCHOOL DISTRICT OF ABINGTON HEIGHTS, FRED R. ROSETTI, ED.D, CLARENCE LAMANNA, ED.D., DAVID ARNOLD, ED.D., WILLIAM MCNULTY, and MARIELLEN SLUKO, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are three motions to dismiss.  The first was filed by Defendant Susan Comerford Wzorek.  (Doc. 5.)  The second was filed by Defendants Northeastern Educational Intermediate Unit 19, Fred R. Rosetti, Ed.D. and Clarence Lamanna, Ed.D.  (Doc. 6.)  The third motion was filed by Defendants The School District of Abington Heights, David Arnold, Ed.D., William McNulty, and Mariellen Sluko.  (Doc. 7.)

For the reasons stated below, the motions to dismiss will be granted in part and denied in part, as described in the attached order.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 ("federal question").  This is a removal action for which federal jurisdiction is predicated upon the counts of Plaintiffs' Complaint that allege violations of the United States Constitution and the Individuals with Disabilities Education

Act, codified at Title 20 of the United States Code, sections 1400, *et seq.* The Court

exercises supplemental jurisdiction over Plaintiffs' state-law tort claims pursuant to 28

U.S.C. § 1367.

## BACKGROUND

The allegations of Plaintiffs' Amended Complaint are as follows.

Defendant Susan Comerford Wzorek ("Wzorek") was, at all times relevant to this

action, employed by Defendant Northeastern Educational Intermediate Unit 19 ("NEIU")

as an autistic support teacher.  (Compl. ¶ 2.)  NEIU is part of the public school system of

the Commonwealth of Pennsylvania and provides statutorily-mandated educational

services to school districts in Lackawanna County, including, *inter alia*, Defendant The

School District of Abington Heights ("Abington" or "the School District"), who cannot

provide these specialized services themselves.  (*Id.* ¶¶ 3, 5.)  Defendant Fred R. Rosetti,

Ed.D. ("Rosetti"), at all times relevant to this action, was a policymaker of NEIU, and was

authorized by NEIU to perform the duties and functions of NEIU's Executive Director.  (*Id.*

¶ 7.)  Defendant Clarence Lamanna, Ed.D. ("Lamanna"), at all times relevant to this

action, was employed by NEIU as Director of Special Education.  (*Id.* ¶ 8.)  Defendant

David Arnold, Ed.D. ("Arnold"), at all times relevant to this action, was employed as

Superintendent of the School District, and was authorized as a policymaker therefor.  (*Id.*

¶ 9.)  Defendant William McNulty ("McNulty"), at all times relevant to this action, was

employed as the Supervisor of Special Education for the School District.  (*Id.* ¶ 10.)

Defendant Mariellen Sluko ("Sluko"), at all times relevant to this action, was employed by

2

Abington as the Principal of Clarks Summit Elementary School ("CSES").  (*Id.* ¶ 11.)  It was within the scope of responsibilities of Defendants Rosetti, Lamanna, Arnold, McNulty, and Sluko to supervise and monitor Defendant Wzorek at the time of the events outlined herein below.  (*Id.* ¶¶ 7-11.)  Additionally, it was within the responsibilities and duties of Defendant Arnold, as Superintendent of the School District, to supervise the school property where Defendant Wzorek worked and the care and custody of the children being taught there.  (*Id.* ¶ 9.)

Minor-Plaintiff, RR, was born on January 21, 1997.  (*Id.* ¶ 12.)  She has been diagnosed as having autism, a disorder that falls under the umbrella of Pervasive Developmental Disorders, and which is a complex developmental disability that impacts development in the areas of social interaction and communication skills.  Children with autism, although typically exhibiting difficulty as far as language development and ability to interact socially, can learn and function normally, with appropriate treatment and education.  (*Id.* ¶¶ 13-14.)  RR's specific condition renders her high-functioning and able to verbalize, but she suffers from a condition known as echolalia, which can be characterized as the automatic and meaningless repetition of another's words and phrases.  (*Id.* ¶ 15.)

RR, at all times relevant to this action, was enrolled in the NEIU, and the School District, specifically their Special Education Autistic Support Division, whose purpose is to meet the needs of students with specific interactive/social impairments.  (*Id.* ¶ 16.)  At all times relevant hereto, Defendants NEIU and the School District exercised supervisory responsibilities over the autistic support teachers, including Defendant Wzorek.  (*Id.* ¶¶

17-18.)  At all times material and relevant hereto, Defendant Wzorek was minor Plaintiff

RR's autistic support teacher, and was an employee of both NEIU and the School

District.  (*Id*. ¶¶ 24-25.)

As special needs institutions the School District and NEIU, along with their special

education teachers, are required to follow the Regulations for Special Education devised

by the State Department of Education, codified at Title 22 of the Pennsylvania State

Code, Chapter 14.  These regulations govern the treatment and education of special

needs public school children, including behavior management.  (*Id*. ¶ 19.)  The Boards of

Directors of both NEIU and the School District have adopted the Child Protective

Services Law of 1990 ("CPSL"), codified at 23 PA. CONS. STAT. ANN. ¶ 6301, *et seq*., to

affirm the obligation of their respective employees to assist in identifying possible child

abuse, as well as victimization of students by other employees, and to establish

procedures for supporting such in compliance with the CPSL and its amendments.  (*Id*.

¶¶ 20-21.)  The Pennsylvania Department of Education ("PDE") must approve both the

School District and NEIU's annual plans as assurance that they will adhere to the

aforementioned regulations and statutes regarding the education of students with

disabilities.  (*Id*. ¶¶ 22-23.)

At all times relevant and material hereto, Defendant Wzorek held a teaching

certificate issued by the PDE.  (*Id*. ¶ 29.)  As a special education teacher, Defendant

Wzorek was required by the PDE to maintain her teaching certification active by earning

a required number of continued education credits every five years.  (*Id*. ¶ 26.)  The PDE,

through its Teacher Certification Bureau, ensures that special education teachers are

properly trained, and have taken part in an initiative to train special education teachers specifically on autism. (*Id.* ¶ 27.) At all times material and relevant hereto, Defendant Wzorek's immediate employers and supervisors, *i.e.*, NEIU and the School District, were responsible for ensuring that each teacher, including Wzorek, was adequately trained. (*Id.* ¶ 28.)

As an autistic support teacher, Defendant Wzorek's duties included, *inter alia*, keeping safe and secure the autistic children in her care, custody, and control, and attending to all of the daily classroom needs of her autistic students, which include feeding, toileting, academic training, and assisting in independent learning, as well as routinely accompanying NEIU students to Abington's library, gym, cafeteria, art class, music class, computer training center, and mainstream classrooms within the School District. (*Id.* ¶ 30.) During the course of performing the aforementioned daily duties, Defendant Wzorek continuously and systematically employed the use of aversive techniques, which are deliberate activities designed to establish a negative association with a specific behavior, and which techniques are specifically excluded from the list of positive approaches to behavior management found in Title 22 of the Pennsylvania School Code (PSC), section 14.133(e). (*Id.* ¶ 31.) Defendant Wzorek used aversive techniques to redirect her autistic students' behavior, including that of Minor-Plaintiff RR. Specifically, these techniques included, but were not limited to: (a) making RR sit all by herself at snack-time, to either make her eat alone, or to withhold her food as punishment for acting out, (b) striking RR in the mouth with a backhand type blow, catching her ring to RR's mouth, causing a swollen and bloody lip, (c) screaming in RR's face, (d) squeezing

and crushing RR's fingers while holding her hand, (e) stomping on RR's insteps, and (f) strapping RR to a Rifton Chair, rendering her unable to move.  (*Id*. ¶ 32.)

Additionally, Defendant Wzorek employed the use of restraints on her autistic students, the proper use of which is specifically reserved for instances where there is a clear and present immediate threat of danger of injury to self or to others, as per Title 22 of the PSC, § 14.133(c).  A lawful use of restraints shall cause a meeting of the IEP team to review the current Individualized Educational Program, or IEP, for appropriateness and effectiveness.  An IEP is a statement of educational services prepared collaboratively by the local education agency, the parents, teachers, and if applicable, related service providers (*e.g.*, occupational or physical therapists, or speech and language pathologists) for each student.  This group is known as the IEP team.  (*Id*. ¶ 33.)

During the relevant time period from September 2001 through June 2003, three Rifton Chairs were kept in Defendant Wzorek's classroom, in full and open view of the Minor-Plaintiff RR and all other students in the classroom.  One of the Rifton Chairs had straps, and for the other two, Defendant Wzorek used bungee cords as straps.  The sole, proper use and purpose of a Rifton Chair is to provide support for those autistic children with little motor control or muscular strength.  It looks like a small highchair with straps and a tray, but is low to the ground.  During the relevant time frame from September 2001 through June 2003, Defendant Wzorek restrained other students in the presence of Minor-Plaintiff RR in a Rifton Chair in order to punish or abuse them.  (*Id*. ¶ 34.)  At no point during the relevant time period was an IEP team meeting convened to address the unlawful use of the restraints, and to propose positive behavioral management techniques should the need for discipline arise in the future.  (*Id*. ¶ 35.)

6

As part of the administration of her classroom, Defendant Wzorek kept "contact books" for each student in her class, to serve as a communication liaison between her students and their parents.  In the contact books, Defendant Wzorek would make comments as to each student's progress, and provide a forum for each student's parents to express their questions and concerns.  (*Id*. ¶ 36.)

Shortly after the 2002-2003 school year began, Plaintiffs noticed pronounced changes in their Minor daughter RR's behavior, and specifically, that a trend of regression as to his development was taking place.  Minor-Plaintiff RR exhibited, *inter alia*, (a) regression in regards to her toilet training, (b) waking up during the night, screaming and insisting on sleeping with her parents, (c) throwing herself on the floor and crying upon returning home from school, (d) regression in regards to her behavior, *e.g.*, hitting herself, pulling her own hair, flailing around uncontrollably, and hitting, scratching, pinching, biting, or pulling the hair of whomever she was sitting with, (e) more prominent echolalia, where she would lower her voice and mimic the aggressive phrases of Defendant Wzorek, such as "Get in that chair," "You're terrible," and "What did you do?", and (f) responding to anyone who would try to hold her hand, "Do you want to crush my fingers?".  (*Id.* ¶ 37.)

During the relevant time frame, Defendant Wzorek's classroom benefitted from the employment of two full-time teacher's assistance, Ms. Jill Celli ("Celli") and Ms. Robin L. Medeiros ("Medeiros"), who worked with Defendant Wzorek in her classroom for two years.  (*Id*. ¶ 38.)  In or about October of 2002, Medeiros witnessed Defendant Wzorek backslap Minor-Plaintiff RR across her face, causing her to develop a fat lip.  When the Minor-Plaintiff wouldn't keep quiet, Defendant Wzorek hit her a second time.  Ms.

Medeiros then witnessed Defendant Wzorek call Rachel's mother to tell her than RR had just injured herself by falling forward.  (*Id.* ¶ 39.)

In or about May of 2003, teaching assistants Celli and Medeiros confronted Defendant Wzorek in an attempt to stop Wzorek's abusive techniques.  Her response to Celli and Medeiros was "I know, but I don't know how to stop."  Upon receiving this reply, Celli and Medeiros decided to report Defendant Wzorek to NEIU's Executive Administrators.  (*Id.* ¶ 40.)  On or about July 28, 2003, both Celli and Medeiros approached Defendant Lamanna, Defendant NEIU's Director of Special Education, with detailed documentation regarding the treatment Defendant Wzorek displayed towards the autistic students in her classroom.  Specifically, they claimed that such treatment was aggressive, abusive, and that use of such aversive techniques was unlawful.  (*Id.* ¶ 41.) Defendant Lamanna's response to Celli and Medeiros was that the situation was "over his head" and that Defendant Rosetti, NEIU's Executive Director, would have to get involved.  A subsequent meeting was then scheduled with Mr. Rosetti.  (*Id.* ¶ 42.)

As Celli and Medeiros arrived at NEIU for their meeting with Defendant Rosetti, Ms. Medeiros overheard Defendant Rosetti on the phone with Defendant Wzorek saying, "Don't worry Sue, they are coming in here to shoot their loads but nothing's going to happen and then we'll be done with it."  (*Id.* ¶ 43.)  During the meeting with Defendant Rosetti, Celli and Medeiros again presented detailed documentation of their eyewitness accounts of Defendant Wzorek's abusive treatment towards Minor-Plaintiff and other autistic students.  (*Id.* ¶ 44.)

Around mid-August, 2003, Celli and Medeiros were informed that an internal

investigation of Defendant Wzorek would be conducted.  (*Id*. ¶ 45.)  One week later, Celli

and Medeiros were summoned by NEIU to attend another meeting regarding Defendant

Wzorek's abuses, and arrived at NEIU to instead be met by NEIU's attorney, Mr. Jeffrey

Tucker.  Attorney Tucker represented to Celli and Medeiros that they had a right to know

neither the results of the NEIU investigation, nor whether NEIU even intended to take any

action in response to their allegations against Defendant Wzorek.  (*Id*. ¶ 46.)  Around the

same time, Celli and Medeiros were advised by NEIU that it had completed its

investigation.  However, they later learned that no meaningful investigation had ever

taken place, *i.e.*, that the documented parents and school employees, who would have

been instrumental in conducting an investigation, were never contacted.  Additionally,

Celli and Medeiros were advised that Defendant Wzorek's classroom conduct would not

be reported to law enforcement officials.  (*Id*. ¶ 47.)  In October of 2003, Celli and

Medeiros approached the Principal of CSES, Defendant Sluko, in order to voice their

concerns.  During this meeting, Defendant Sluko accused Celli and Medeiros of "breaking

a silent code," which she likened to a code among police officers.  (*Id*. ¶ 48.)

NEIU decided that Defendant Wzorek would be transferred to the Scranton School

District for the 2003-2004 school year, where she would continue to have contact with

special needs students, as a Learning Support teacher at West Scranton High School.

(*Id*. ¶ 49.)  In late September of 2003, Defendant Arnold, Superintendent of the School

District, wrote a letter to Defendant Lamanna, soliciting his assistance in having Celli and

Medeiros transferred to another school district.  Specifically, he wrote, " . . . [the teacher's

assistants'] behavior has negatively affected the work environment for our teaching staff,

and . . . I am asking that they be moved from our building as soon as possible." (*Id*. ¶ 50.)  Defendants Lamanna and Rosetti then advised the School District in the spring of 2004 that they would not oppose the transfer of the entire autistic support classroom, which effectively served to transfer Celli and Medeiros.  (*Id*. ¶ 52.)

On September 26, 2006, Defendants filed a notice of removal from the Court of Common Please of Lackawanna County, Pennsylvania to this Court, based on Plaintiffs' inclusion of federal causes of action in their Amended Complaint.  (Doc. 1.)  On October 2, 2006, Defendant Wzorek filed her motion to dismiss.  (Doc. 5.)  On this same date, Defendants NEIU, Rosetti, and Lamanna filed their motion to dismiss (Doc. 6.)  On the following day, October 3, 2006, Defendants Arnold, McNulty, Sluko, and the School District filed their motion to dismiss.  (Doc. 7.)  These three motions to dismiss are fully briefed and ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all of the facts alleged in the complaint and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Marion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000). In their motions to dismiss, Defendants aver that each of the Counts of Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and seek dismissal pursuant to Rule 12(b)(6).

Further, Defendants' motions to dismiss seek dismissal of Plaintiffs' Complaint on

the grounds that Plaintiffs failed to exhaust their administrative remedies.   In most

circumstances, motions for dismissal based on a failure to exhaust administrative

remedies are reviewed under Rule 12(b)(6), rather than under Federal Rule of Civil

Procedure 12(b)(1), because the exhaustion requirement normally does not implicate a

court's jurisdiction.  *Anjelino v. New York Times Co.*, 200 F.3d 73, 87-88 (3d Cir. 2000);

*see also D'Amico v. CBS Corp.*, 297 F.3d 287, 290 (3d Cir. 2002).   In contrast, the Third

Circuit Court of Appeals in *W.B. v. Matula* determined that exhaustion is jurisdictional in

the IDEA context.  67 F.3d 484, 493 (1995).   Accordingly, the appropriate device by

which to consider this jurisdictional challenge is a motion to dismiss pursuant to Rule

12(b)(1) for lack of subject matter jurisdiction.  *See* FED.R.CIV.P. 12(b)(1) (providing for

dismissal of complaint where court lacks subject matter jurisdiction).  *See Falzett v.

Pocono Mountain Sch. Dist.*, 150 F.Supp.2d 699, 701 & n. 2 (M.D. Pa. 2001) (Caputo,

J.).   Therefore, Defendants' motions to dismiss will be construed as pursuant to Rule

12(b)(1) to the extent that they challenge Plantiffs' failure to exhaust administrative

remedies.

     Unlike dismissal under Federal Rule of Civil Procedure Rule 12(b)(6), dismissal

under Rule 12(b)(1) for lack of subject matter jurisdiction is not a judgment on the merits

of the plaintiff's case, but only a determination that the court lacks the authority to hear

the case.  *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.

1977).   A Rule 12(b)(1) motion may be treated either as a facial or a factual challenge to

the court's subject matter jurisdiction.  *Gould*, 220 F.3d at 178 (3d Cir. 2000).   If the

motion is treated as a facial attack, the court may consider only the allegations contained

in the complaint and the exhibits attached to the complaint, matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies, and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss.  *See generally Pension Benefit Guar. Corp.,* 998 F.2d at 1196-97.

On the other hand, if the defendant submits and the court considers evidence that controverts the plaintiff's allegations, the court must treat the motion as a factual challenge under Rule 12(b)(1).  *Gould*, 220 F.3d at 178.  In such cases, "the trial court is free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891.  No presumption of truthfulness attaches to the allegations in the plaintiff's complaint, and the burden of proof is on the plaintiff to show that the court possesses jurisdiction.  *Id.*  However, the plaintiff must be permitted to respond to the defendant's evidence with evidence supporting jurisdiction.  *Id.*  In the present matter, Defendants have submitted no evidence controverting the allegations contained in Plaintiffs' Amended Complaint.  Therefore, the Court will consider only the allegations in the Plaintiffs' Amended Complaint, treating the Defendants' motions to dismiss as a facial attack on subject matter jurisdiction pursuant to Rule 12(b)(1) to the extent that they are challenging Plaintiffs' failure to exhaust administrative remedies.

**DISCUSSION**

Plaintiffs' Complaint contains fourteen (14) counts.  Count I alleges against all

13

Defendants, pursuant to Section 1983 of Title 42 of the United States Code, a violation of Minor-Plaintiff RR's civil rights under the IDEA, for Defendants' failure to provide a free and appropriate education to Minor-Plaintiff, and for the physical and mental abuse inflicted upon RR as a result of Defendants' actions.  Count II alleges violations of the Equal Protection Clause and Due Process Clause of the 14th Amendment to the United States Constitution, against all named Defendants.  Count III alleges a violation of the IDEA, codified at Title 20 of the United States Code, sections 1400 *et seq.*, against all named Defendants, for their failure to identify, evaluate, and provide a free appropriate public education to RR and for the use of bodily restraints against Minor-Plaintiff without her consent and in disregard of the law.

Count IV alleges assault and battery against Defendant Wzorek for her intentional acts against RR's person, as described above.  Count V alleges intentional infliction of emotional distress against Defendant Wzorek for placing the Minor-Plaintiff in apprehension of bodily harm, in assaulting and battering her, and in verbally and emotionally abusing her.  Count VI alleges a breach of fiduciary duty against Defendant Wzorek for breaching her duties as a teacher, mentor, and care-giver to Minor-Plaintiff RR as a result of her alleged actions.  Count VII alleges the tort of negligence against Defendant Wzorek for negligently, carelessly, and recklessly breaching her duty to render educational and other services with reasonable care for the heightened needs of her special education students, including RR, and that as a proximate result of these breaches of duty, Minor-Plaintiff RR suffered various damages.  Count VIII seeks punitive damages against Defendant Wzorek, alleging that her acts were performed outrageously, maliciously, wantonly, and willfully, and resulted in the aforementioned injuries to RR.

14

Count IX alleges vicarious liability against Defendants NEIU and the School District (hereinafter referred to collectively as "the Organization Defendants"), and Defendants Lamanna, Rosetti, Sluko, McNulty, and Arnold (hereinafter referred to collectively as "the Supervisor Defendants") for the acts of Defenant Wzorek, alleging that all relevant times she was performing her duties and functions within the scope of her employment as an autistic support teacher with the Organization Defendants, and was under the review and supervision of the Supervisor Defendants.  Count X alleges intentional infliction of emotional distress against the Organization Defendants and Supervisor Defendants, alleging that the actions or inactions of said Defendants placed Minor-Plaintiff RR in an unreasonable risk of bodily harm that constituted extreme and outrageous conduct.  Count XI alleges breach of fiduciary duty against the Organizational Defendants and the Supervisor Defendants, by failing to properly supervise Defendant Wzorek and provide Minor-Plaintiff with the type of specialized education she required. Count XII alleges negligence against the Organizational Defendants and Supervisor Defendants, averring that said Defendants breached their duty owed to properly screen, train, and supervise Defendant Wzorek, and that as a result RR suffered various damages.  Count XIII raises a claim for punitive damages against the Organizational Defendants and Supervisor Defendants, claiming that their actions were reckless, extreme, outrageous, wanton, willful, malicious, and in conscious disregard of the risk of harm to Minor-Plaintiff RR.  Finally, Count XIV alleges civil conspiracy against all named Defendants, alleging that their concerted actions constituted a wrongful combination or agreement to do unlawful acts, or to do otherwise lawful acts by unlawful means.

**A.)  Plaintiffs' Federal Claims - Counts I-III**

      I.     The IDEA - Count III

In 1970, Congress enacted the Education of the Handicapped Act (EHA), later renamed the Individuals with Disabilities Education Act (hereinafter, "the IDEA"), codified at Title 20 of the United States Code, sections 1400 *et seq.*, to assure that all children with disabilities have available to them a free appropriate public education, which emphasizes special education and related services designed to meet their unique needs. The central purpose of the IDEA is to ensure that children with disabilities have a free appropriate public education (FAPE) and that their rights are protected.  20 U.S.C. § 1400(d).

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that ... [a] free appropriate public education is available to all children with disabilities. . . ."  20 U.S.C. § 1412(a)(1)(A); *Shore Regional High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004).  A free appropriate public education " 'consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction.' "  *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 188-89 (1982)).  The "primary vehicle" for implementing a free appropriate public education is the Individualized Educational Program (IEP).  "The IEP consists of a detailed written statement arrived at by a multi-disciplinary team summarizing the child's abilities, outlining the goals for the child's education and specifying the services the child will receive."  *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 173 (3d Cir.

1988) (citing 30 C.F.R. § 300.347), *cert. denied*, 488 U.S. 1030 (1989). *Melissa S. v. School Dist. of Pittsburgh*, 183 Fed. Appx. 184, 186-87 (3d Cir. 2006).

To prevail on a claim that a school district failed to implement an IEP, a plaintiff must show that the school failed to implement substantial or significant provisions of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). Flexibility to implement an IEP is maintained, yet the school district is accountable for "confer[ring] some educational benefit upon the handicapped child," as required by the IDEA. *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (citing *Rowley*, 458 U.S. at 188-89). *Melissa S.*, 183 Fed. Appx. at 187.

a.) *Exhaustion of Administrative Remedies*

The IDEA creates a "right, enforceable in federal court, to the free appropriate public education required by the statute." *Smith v. Robinson*, 468 U.S. 992, 1002 n. 6 (1984), *superseded by statute on other grounds by* Pub. L. No. 99-372, 100 Stat. 796 (1986); *accord Honig v. Doe*, 484 U.S. 305, 310 (1988) (describing the right to a free appropriate public education as "an enforceable substantive right"). Before a plaintiff can bring a claim in federal court for an IDEA violation, however, he must exhaust his administrative remedies, including, in Pennsylvania, a local due process hearing and an appeal to the state educational agency. 20 U.S.C. § 1415(f). Any party dissatisfied with the state administrative hearing may bring a civil action in state or federal court, in which the court must conduct an independent review based on the preponderance of the evidence, while giving "due weight" to the state administrative findings. *Polk*, 853 F.2d at

173 (citing *Rowley*, 458 U.S. at 206-07).

The IDEA's exhaustion requirement applies to all claims for relief available under the IDEA, even if a claim arises under a different cause of action. *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996). That is to say, Plaintiffs may not avoid the exhaustion requirement by alleging an IDEA violation in a § 1983 claim predicated upon the IDEA.

b. *'Futile or Inadequate' Exception to IDEA Exhaustion Requirement*

As stated above, the IDEA requires a party to exhaust administrative remedies before they may sue in federal court. 20 U.S.C. § 1415(l); *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990). Plaintiffs concede that they did not satisfy the IDEA's exhaustion requirements. They argue, however, that their failure to exhaust is excused under a recognized exception to the exhaustion doctrine.

According to the Third Circuit Court of Appeals, exhaustion under the IDEA is excused when resort to such procedures would be "futile or inadequate." *Matula*, 67 F.3d at 495; *see also Honig*, 484 U.S. at 327 (recognizing "futile or inadequate" exception to exhaustion requirement). Where plaintiffs seek application of this exception, it is their burden to prove the futility or inadequacy of administrative exhaustion. *Honig*, 484 U.S. at 327.

The Third Circuit Court of Appeals, excusing failure to exhaust based on the futility exception, has held that "where the relief sought in a civil action is not available in IDEA administrative proceedings, recourse to such proceedings would be futile and the exhaustion requirement is excused." *Matula*, 67 F.3d at 496 (citing *Gilhool*, 916 F.3d at

18

870).  *Accord McCachren v. Blacklick Valley Sch. Dist.*, 217 F. Supp. 2d. 594, 597 (W.D.

Pa. 2002) (holding that the exhaustion requirement is limited to actions seeking relief that

is "also available" under the IDEA).  In reaching this conclusion, the Court of Appeals

looked first to the language of the statute itself.  The IDEA states that "before the filing of

a civil action under such laws . . . *seeking relief that is also available under this*

*subchapter*, the procedures under subsection (f) and (g) of this section shall be

exhausted . . . ."  20 U.S.C. § 1415(l) (emphasis added); *Matula*, 67 F.3d at 495 (quoting

this language, which was then found at 20 U.S.C. § 1415(f)).  Recognizing that damages

are available under § 1983, but not under the IDEA administrative procedures, the *Matula*

court then concluded that "by its plain terms [this section] does not require exhaustion

where the relief sought is unavailable in an administrative proceeding."  *Matula*, 67 F.3d

at 495.  The *Matula* court reviewed the legislative history, and found compelling support

for applying this exception to failure to exhaust IDEA administrative procedures in that

case.  *Id. (*citing Congressional reports, *infra*).

    The administrative process utilizes the expertise of local agencies, resolves

evidentiary disputes, develops a factual record, and encourages consistency and

procedural efficiency.  *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 779

(3d Cir. 1994) (noting that the IDEA administrative "process offers an opportunity for state

and local agencies to exercise discretion and expertise in fields in which they have

substantial experience."); *Gilhool*, 916 F.2d at 869.


    c.  *Plaintiffs' Complaint*

    It is undisputed that Plaintiffs have not utilized Pennsylvania's IDEA administrative

19

process to redress any of their claims.  As justification, Plaintiffs invoke the futility

exception and argue that exhaustion is not required in this case because they seek only

monetary damages, a form of relief unavailable under the IDEA.  Additionally, however,

Plaintiffs' § 1983 claim (Count I) and IDEA claim (Count III) assert that Defendants failed

to "implement a proper behavior management plan" (Compl. ¶ 56), and failed "to identify,

evaluate, and provide the Minor[-]Plaintiff with a [FAPE]" (Compl. ¶ 75).  Defendants

claim that this language challenges the contents of the IEP prepared for the Minor-

Plaintiff, thus requiring administrative exhaustion.  While a challenge to the contents of an

IEP would require exhaustion of administrative remedies–since school administrators are

in the best position to establish appropriate educational programs–exhaustion of

administrative remedies when a plaintiff is challenging only a failure to implement an IEP

would prove fruitless.  *See Joseph M. ex rel. Kimberly F. v. Southeast Delco Sch. Dist.*,

No. Civ. A. 99-4645, 2001 WL 283154, at *7 (E.D. Pa. Mar. 19, 2001) (citing *Gilhool*, 916

F.2d at 869-70 (noting that courts require exhaustion where the "peculiar expertise" of a

hearing officer is needed to develop a factual record concerning the development of an

appropriate IEP)).

Though the terms "identify" and "evaluate" are used in Count III of Plaintiffs'

Complaint, there is no further suggestion that there was a failure to either identify[1] the

Minor-Plaintiff as a child with a disability or that RR's IEP would have been inadequate if

not for the allegedly improper implementation thereof.  Plaintiffs have challenged, in

---

[1] The IDEA imposes on school districts the so-called "child find" duty, which requires that they have a system in place to identify, locate, and evaluate all children with disabilities residing in their district.  20 U.S.C. § 1412(a)(3); *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 275 (3d Cir. 2007).

effect, only the Defendants' failure to implement the Minor-Plaintiff's IEP.  Where some district courts have refused to apply the futility exception to IDEA plaintiffs who have not exhausted administrative remedies, the factual scenarios present in those cases are distinguishable from the case at bar.  Those courts were primarily focused on the issue of eligibility under the IDEA, *i.e.*, whether the child was disabled and thus qualified for the special services under the IDEA.  No such determination is required in this case.  Minor-Plaintiff has been diagnosed as having autism and was enrolled specifically in the Special Education Autistic Support Division.  (Compl. ¶¶ 13,16.)  Defendants here do not contest that Minor-Plaintiff is disabled, and thus qualified for the special services under the IDEA. The courts that have invoked the policy underlying the exhaustion requirement in cases seeking only monetary damages–specifically that an administrative agency, rather than a district court, is the appropriate entity to determine the factual question of IDEA eligibility–have done so when IDEA eligibility was unresolved.  *See, e.g., Blanck v. Exeter Sch. Dist.*, No. Civ.A.01-1402, 2002 WL 31247983, at *2-3 (E.D. Pa. Oct. 2, 2002); *Lindsley ex rel. Kolodziejczack v. Girard Sch. Dist.*, 213 F.Supp.2d 523, 535 (W.D. Pa. 2002).

The legislative history relied upon by the Third Circuit Court of Appeals in *Matula*, 67 F.3d at 495, provides further guidance here.  In *Joseph M.*, another district court in this Circuit cited this congressional evidence, and more.  It relied upon Congress's distinction between "the *implementation* of an IEP, as opposed to the *contents* of an IEP." No. Civ. A. 99-4645, 2001 WL 283154, at *7 (E.D. Pa. Mar. 19, 2001) (emphasis in original) (quoting a Representative and a Senator making identical remarks that "there are situations in which it is not appropriate to require the exhaustion of [IDEA]

21

administrative remedies before filing a civil law suit.  These include complaints that . . . an agency has failed to provide services specified in the child's individualized education program."); 131 Cong. Rec. S10396- 01 (daily ed. July 30, 1985) and H9964-02 (daily ed. Nov. 12, 1985); *see also* House Report at 7 (discussing appropriate exceptions to exhaustion requirement of EHA and stating that "it would be futile to use due process procedures . . . [when] an agency has failed to provide services specified in the child's IEP . . . .").  This legislative history supports the finding that Congress intended exhaustion to be excused in this instance.

There is one additional consideration worthy of discussion here that was central to the Court of Appeals's holding in *Matula*.  The parties in *Matula* had participated in an extended series of administrative proceedings, including four IDEA due process hearings, which resulted in the development of an extensive factual record.  Thus one of the principal reasons for the exhaustion requirement–to allow the administrative body with the relevant expertise to create an evidentiary record prior to judicial review–did not apply in *Matula*, and the Court therefore had little difficulty in disposing of the exhaustion requirement.

Quite obviously, there is no detailed factual record before the Court, as there have been no administrative proceedings in this matter.  Defendants argue that development of this factual record necessarily requires administrative exhaustion in this case.  However, in light of the fact that the Plaintiffs are requesting relief that is unavailable through the IDEA administrative process, that IDEA eligibility is not in issue, and that the relevant factual record may be adequately developed through standard discovery procedures, this Court will dispense with the exhaustion requirement in this matter.  The

Court will therefore deny Defendants' motions to dismiss the IDEA Count for failure to exhaust administrative remedies.

## II.     14th Amendment Violations - Due Process & Equal Protection - Count II

Plaintiffs also allege that Defendants violated Minor-Plaintiff RR's rights under the 14th Amendment's Due Process and Equal Protection Clauses.

### a.) Procedural Due Process

The procedural component of the Due Process Clause provides that certain substantive rights–life, liberty, and property–cannot be deprived except pursuant to constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  The IDEA imposes extensive procedural due process requirements, as the Court has stated above.  Plaintiffs in this action, however, have not alleged any procedural inadequacies with respect to the provision of a FAPE to the Minor-Plaintiff. Indeed, they avail themselves of this Court's jurisdiction based on the argument–which the Court accepts–that an administrative due process hearing would be inadequate to provide the relief requested in their Complaint.

Accordingly, the Court will grant Defendants' motions to dismiss Count II of Plaintiffs' Complaint to the extent it alleges a violation of procedural due process.

### b.)  Substantive Due Process

Plaintiffs' substantive due process claims appear to arise from (1) Defendants' failure to provide RR with a FAPE and (2) Defendants' failure to protect RR from bodily harm.  (Compl. ¶¶ 70-73).

The denial of a FAPE does not give rise to a substantive due process violation because the substantive component of the Due Process Clause does not protect

23

educational interests.  *M.M. v. Tredyffrin/Easttown Sch. Dist.*, No. 06-CV-1966, 2006 WL
2561242, at *12 (E.D. Pa. Sept. 1, 2006) (citing *San Antonio Indep. Sch. Dist. v.
Rodriguez*, 411 U.S. 1, 33-38 (1973) (holding that education is not a fundamental right or
liberty)); *see Nicholas v. Penn. State Univ.*, 227 F.3d 133, 141 (3d Cir. 2000) ("[A]
property interest must be constitutionally 'fundamental' in order to implicate substantive
due process.").  Accordingly, Defendants' motions to dismiss Plaintiffs' substantive due
process claim based on RR's educational interests will be granted for Plaintiffs' failure to
identify a property interest that is protected by the Due Process Clause.  *See Nicholas*,
227 F.3d at 139-40 (holding that due process-protected property interest is threshold
element plaintiff must establish for non-legislative substantive due process claim).

Plaintiffs also claim that Defendants' conduct toward the Minor-Plaintiff violated
her substantive due process right to bodily integrity.  The substantive component of the
Due Process Clause "protects individual liberty against certain government actions
regardless of the fairness of the procedures used to implement them."  *Gottlieb v. Laurel
Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quotations omitted).  Only state
conduct that is "arbitrary, or conscience shocking, in a constitutional sense" rises to this
level.  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).

"[T]he constitutional concept of conscience-shocking duplicates no traditional
category of common-law fault . . . ."  *Lewis*, 523 U.S. at 848.  The pertinent inquiry is "
'whether the force applied caused injuries so severe, was so disproportionate to the need
presented, and was so inspired by malice or sadism rather than a merely careless or
unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power
literally shocking to the conscience.' "  *Jones v. Witinski*, 931 F.Supp. 364, 369 (M.D. Pa.

1996) (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

Defendants move the Court to dismiss Plaintiffs' substantive due process claim on the ground that Defendant Wzorek's actions, even when viewed in the light most favorable to the Plaintiffs, were not sufficiently severe as to "shock the conscience." While a single slap to the face, *see Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725-26 (6th Cir. 1996), or punch to the chest of a student, *see Kurilla v. Callahan*, 68 F. Supp. 2d 556, 564 (M.D. Pa. 1999) (Vanaskie, J.), are conduct insufficient to "shock the conscience", the alleged repeated administration of injuries to RR's person, as described in the Complaint, are sufficiently shocking to the conscience, at this juncture, to survive the motions to dismiss the substantive due process claim.

Accordingly, Defendants' motions to dismiss Count II of Plaintiffs' Complaint to the extent it alleges a violation of substantive due process for a failure to protect RR's bodily integrity will be denied.

### c.) Equal Protection

The Equal Protection Clause requires that the law treat similarly situated people alike. U.S. CONST. amend. XIV, § 1; *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiffs assert that an equal protection violation resulted from Defendants' discrimination against RR based on her handicap, which denied her an equal educational experience. (Compl. ¶ 70.) Plaintiffs' equal protection claim is based on the same allegations of disability discrimination used to support their due process claim.

A disability, such as autism, is "not 'a quasi-suspect classification calling for a more exacting standard of judicial review than is normally accorded economic and social legislation.' " *Cleburne*, 473 U.S. at 442. Nevertheless, at this stage Plaintiffs need only

have plead that a state actor had an intent to disadvantage all members of a class that includes the Minor-Plaintiff RR.  *See generally Crawford-El v. Britton*, 523 U.S. 574, 592 (1998).  Plaintiffs have alleged that Defendant Wzorek repeatedly discriminated against the Minor-Plaintiff and other autistic students in her class by inflicting physical and emotional abuse upon them, but did not so discriminate against her other special education students.  (Compl. ¶ 70.)

Accordingly, Defendants' motions to dismiss Count II of Plaintiffs' Complaint to the extent it alleges a violation of the Equal Protection Clause will be denied.

III.    42 U.S.C. § 1983 - Count I

Plaintiffs seek to hold the School District, NEIU, and its employees liable under Title 42, United States Code, section 1983 for their actions, or inactions, with respect to the Minor-Plaintiff.  The theory of *respondeat superior* cannot be the basis for such liability; "[r]ather, a municipality may be held liable only if its policy or custom is the 'moving force' behind a . . . violation."  *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

In the instant Complaint, Plaintiffs aver that the alleged violations under the IDEA resulted from a policy, custom, or practice of the School District and NEIU.  To prevail on the section 1983 claim at trial, Plaintiffs will need to demonstrate that a School District or NEIU employee(s) violated RR's federally protected rights while implementing an official policy, custom, or practice of the School District.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (describing the circumstances under which an individual's conduct implements an official policy or practice).

At this stage, the allegations as set forth in Plaintiffs' Complaint are sufficient to survive a motion to dismiss.  Therefore, the Court will deny Defendants' motions to dismiss the § 1983 claim.

**B.)  Plaintiffs' Tort Claims against Defendant Wzorek - Counts IV, V, VI, and VII**

I.      Count IV - Assault and Battery

In Pennsylvania the common law torts of assault and battery are consolidated under the term "assault", and a person is guilty of assault if he either "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another" or "attempts by physical menace to put another in fear of imminent serious bodily injury."  *Commonwealth v. Jackson*, 907 A.2d 540, 545 (Pa. Super. Ct. 2006) (citing 18 PA. CONS. STAT. ANN. § 2701(a)).

Certainly, Defendant Wzorek's alleged acts of corporal punishment against the Minor-Plaintiff constitute acts that, when viewed in the light most favorable to the Plaintiffs, make dismissal of this Count inappropriate.

II.     Count V - Intentional Infliction of Emotional Distress

"To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe."  *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. 1997).  Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Strickland v. Univ. of Scranton*,

27

700 A.2d 979, 987 (Pa. Super. Ct. 1997).  Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!"  *Id.*

Defendant Wzorek's alleged acts of corporal punishment against Minor-Plaintiff RR could reasonably be considered extreme and outrageous and having been performed intentionally.  Further, Plaintiffs have averred that the Minor-Plaintiff suffered severe emotional distress, including but not limited to post-traumatic stress disorder, fear, and developmental delays as a result of Defendant Wzorek's alleged acts.

Accordingly, dismissal of this Count is inappropriate at this stage.

### III.    Count VI - Breach of Fiduciary Duty

The basic duties which arise from the teacher-student relationship are a duty to supervise, a duty to exercise good judgment, and a duty to instruct as to correct procedures, particularly, not but exclusively, when potentially hazardous conditions or instrumentalities are present, and these basic duties must co-exist with the whole purpose for the teacher-student relationship, viz. education.  *Bottorf v. Waltz*, 369 A.2d 332, 334 (Pa. Super Ct. 1976) (citing a summary of the applicable law in another jurisdiction).

Under Pennsylvania law, "[t]he general test for determining the existence of . . . a [fiduciary] relationship is whether it is clear that the parties did not deal on equal terms." *Frowen v. Blank*, 425 A.2d 412, 416 (Pa. 1981).  Indeed, a fiduciary relationship "is not confined to any specific association of the parties."  *Leedom v. Palmer*, 117 A. 410, 411 (Pa. 1922).  Rather, a fiduciary relationship will be found to exist "when the circumstances make it certain the parties do not deal on equal terms, but, on the one

side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible." *Id.*; *see also In re Estate of Clark*, 359 A.2d 777, 781 (Pa. 1976) (a fiduciary relationship exists "as a matter of fact whenever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other"); *Drob v. Jaffe*, 41 A.2d 407, 408 (Pa. 1945) (a fiduciary relationship "exists wherever one occupies toward another such a position of advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest"). One in a fiduciary relationship with another is under a duty to act solely in the interest of that person. *McCarrell v. Cumberland County Employee's Retirement Bd.*, 547 A.2d 1293, 1296 (Pa. Commw. Ct. 1988); *see also Leedom*, 117 A. at 411 (a fiduciary relationship "is one wherein a party is bound to act for the benefit of another, and can take no advantage to himself"). Failure to act in the other's interest results in breach of the duty imposed by the fiduciary relationship. RESTATEMENT (SECOND) OF TORTS § 874 (1979).

Certainly, Defendant Wzorek, as the special education teacher in charge of the instruction of Minor-Plaintiff RR, a child with autism, was in an overmastering position in this relationship, and was trusted and depended upon by RR to exercise sound judgment in handling her care and instruction. Consequently, when viewed in the light most favorable to the Plaintiffs, Defendant Wzorek's motion to dismiss this Count must be denied.

IV.    Count VII - Negligence

29

It has long been held in this Commonwealth that to succeed on a negligence theory, four elements must be present: 1) a duty recognized by law requiring the actor to conform to a certain standard of conduct; 2) failure by the actor to observe this standard; 3) causation between the conduct and injury; and 4) actual damages. *Tomko v. Marks*, 602 A.2d 890, 892 (Pa. Super. Ct. 1992) *(citing Casey v. Geiger*, 499 A.2d 606, 612 (Pa. Super Ct. 1985)).

Plaintiffs' Complaint alleges that Defendant Wzorek negligently, carelessly, and recklessly breached her duty to render educational services with reasonable care for the heightened needs of her special education students, including for the Minor-Plaintiff (Compl. ¶¶ 101-02), and that as a direct and proximate result of this negligence RR suffered and will continue to suffer various injuries (¶¶ 103-04).

As averred in the Complaint, however, the abusive conduct that Defendant Wzorek is accused of was intentional, not negligent.  Consequently, Defendant Wzorek's motion to dismiss will be granted as to Plaintiffs' Count VII.

## C. Plaintiffs' Tort Claims against Organizational Defendants and Supervisor Defendants - Counts IX, X, XI, XII

### I.      IMMUNITY ISSUES

#### a.)  The Political Subdivision Tort Claims Act

Defendants The School District of Abington Heights and NEIU, as a school district and intermediate unit, respectively, are "local agencies" as defined by the Political Subdivision Tort Claims Act, 42 PA. CONS. STAT. ANN. § 8541 *et seq.* ("PSTCA"), and therefore argue that they are immune from Plaintiffs' state law tort claims pursuant to this statute.  Under the PSTCA, local agencies are immune from liability "for any damages on

account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. ANN. § 8541.  This immunity "is waived under § 8542 to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees."[2]  None of these exceptions apply to this case.  Therefore, the general grant of immunity in section 8541 controls and insulates the Organizational Defendants from liability for Plaintiffs' tort claims. Furthermore, the Organizational Defendants, as local agencies under the PSTCA, cannot be held liable for punitive damages. *Marko v. City of Phila.*, 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990).  Accordingly, the Court will grant Defendants the School District and NEIU's motions to dismiss as to all state-law tort claims contained in Counts IX, X, XI, XII, and the punitive damages claim contained in Count XIII, of Plaintiffs' Complaint.

Note, however, that the PSTCA cannot immunize a municipality or political subdivision against a federal cause of action. *Wiehagen v. Borough of N. Braddock*, 559 A.2d 991 (Pa. Commw. Ct. 1989), *aff'd*, 594 A.2d 303 (Pa. 1991).  The governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Acts.  *Cooper v. City of Chester*, 810 F. Supp. 618 (E.D. Pa. 1992); *Stock v. Forbes Health Sys.*, 697 F. Supp. 1399 (W.D. Pa. 1988). Accordingly, the PSTCA has no application to Plaintiffs' causes of actions contained in Counts I-III, and those Counts will survive against the Organization Defendants to the extent described in the attached order.

---

[2]  These acts include liability arising from (1) the operation of motor vehicles, (2) the care, custody or control of personal property, (3) the care, custody or control of real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) the care, custody or control of animals.  42 PA. CONS. STAT. ANN. § 8542(b).

### b.) Official Immunity

The Plaintiffs argue that the Supervisor Defendants forfeited their official immunity by committing acts of willful misconduct.  "Willful misconduct" is more than mere negligence or even gross negligence.  For purposes of section 8550 of the PSTCA, "willful misconduct" has the same meaning as the term "intentional tort."  *Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995); *see also*, Black's Law Dictionary 54 (7th ed. 1999), which defines "willful misconduct" as "misconduct committed voluntarily and intentionally."  In *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (1965), the Pennsylvania Supreme Court defined "willful misconduct" to mean that "the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue."  It is a step beyond "wanton misconduct," which "means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences."  *Gaul v. Consol. Rail Corp.*, 556 A.2d 892, 898 (Pa. Super. Ct. 1989) (quoting PROSSER, TORTS §33 at 151 (2nd ed. 1955)).

In light of the liberal notice-pleading provisions under the Federal Rules of Civil Procedure, Plaintiffs' Complaint has adequately set forth facts from which it may reasonably be inferred that the Supervisor Defendants committed acts of willful misconduct, thus forfeiting their official immunity.  Plaintiffs have alleged that the Supervisor Defendants knew, and failed to act upon the knowledge, that Defendant Wzorek had committed abusive acts towards the Minor-Plaintiff and other autistic students, and that this conduct was likely to occur again.  It is of little moment that certain

named Defendants are not prominently mentioned throughout the Complaint.  At this stage of the proceedings, the Supervisor Defendants' failure to take appropriate action after being put on notice of Defendant Wzorek's alleged abuse of students amounted to "willful misconduct" for which they are not entitled to official immunity under the PSTCA. *Accord DiSalvio v. Lower Merion High Sch. Dist.*, 158 F.Supp.2d 553,

> *c.  Qualified Immunity*

Additionally, the Supervisor Defendants argue that they enjoy qualified immunity. With regard to the federal claims, public officials generally enjoy qualified immunity for their actions unless those actions violate clearly established constitutional rights of which a reasonable person would know.  *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 639-41 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  Defendants bear the burden of establishing that they enjoy qualified immunity.  *See Ryan v. Burlington County*, 860 F.2d 1199, 1204 n.9 (3d Cir. 1988).  The Supervisor Defendants have not carried that burden.  Any reasonable person would have known that acting in the alleged manner would violate the Minor-Plaintiff's well-established rights to bodily integrity and equal protection of the laws.

Further, while an agency's employees generally enjoy qualified immunity to the same extent as does the agency itself, employees do not have such protection where their actions constitute "willful misconduct".  *See* 42 PA. CONS. STAT. ANN. § 8850.  "While 'willful misconduct' generally refers to intentional torts, it can also mean . . . misconduct 'whereby the actor . . . was aware that [a result] was substantially certain to follow, so that desire [that a particular outcome results] can be implied.' " *DiSalvio*, 158 F.Supp.2d at 564 (citing *Owens v. City of Phila.*, 6 F.Supp.2d 373, 394-95 (E.D. Pa. 1998)).  Based on

the allegations of the Complaint, none of the Supervisor Defendants have carried their

burden of showing that they enjoy qualified immunity for their actions, or failures to act.

Plaintiffs have alleged facts–particularly Celli and Medeiros' communications–sufficient to

give rise to the reasonable inference that these Defendants were on notice about

Defendant Wzorek's alleged abusive acts and knew or should have known that their

nonfeasance would allow the abuses to continue.  Because these Defendants were

aware that continued abuse of Minor-Plaintiff, amongst others, was substantially certain

to follow if they did not act, their desire that it continue can be implied.  Accordingly,

based solely on the allegations of the Complaint, read in the light most favorable to the

Plaintiffs, the Supervisor Defendants do not enjoy qualified immunity against Plaintiffs'

state-law tort claims that have been raised against them.

II.      Count IX - Vicarious Liability

Under Pennsylvania law, "an employer is held vicariously liable for the negligent

acts of his employee which cause injuries to a third party, provided that such acts were

committed during the course of and within the scope of the employment." *Fitzgerald v.

McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. Ct. 1979).  "In certain circumstances,

liability of the employer may also extend to intentional or criminal acts committed by the

employee." *Id.*  "The conduct of an employee is considered 'within the scope of

employment' for purposes of vicarious liability if: (1) it is of a kind and nature that the

employee is employed to perform; (2) it occurs substantially within the authorized time

and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer;

and (4) if force is intentionally used by the employee against another, the use of force is

not unexpected by the employer." *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d

34

692, 699 (Pa. Super. Ct. 2000).  "Where, however, the employee commits an act encompassing the use of force which is excessive and so dangerous as to be totally without responsibility or reason, the employer is not responsible as a matter of law." *Fitzgerald*, 410 A.2d at 1272.  Indeed, "a master is not liable for the willful misconduct of his servant, and that such willful misconduct, while it may be within the course of the employment, is not within the scope thereof."  *McMaster v. Reale*, 110 A.2d 831, 832 (Pa. Super. Ct. 1955).

In addition, Pennsylvania courts have held that "an assault committed by an employee upon another for personal reasons or in an outrageous manner is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment." *Fitzgerald*, 410 A.2d at 1272.  For example, in *Sanchez by Rivera v. Montanez*, 645 A.2d 383 (Pa. Commw. Ct. 1994), a child and his parents sued a community action agency, alleging that the agency was vicariously liable for an employee's sexual molestation of the plaintiff child.  The Commonwealth Court of Pennsylvania affirmed the trial court's entry of summary judgment in the defendant agency's favor, holding that the employee's actions were clearly outrageous and motivated purely by personal reasons.  *Id.* at 391.

In this case, Plaintiffs have alleged actions by Defendant Wzorek which would constitute violations of the Pennsylvania School Code, and can in no fashion be said to have been undertaken, even in part, to serve her employers.  Nor could these alleged intentional uses of aversive techniques have been expected by any of the Supervisor Defendants, since such techniques are specifically excluded from Title 22 of the Pennsylvania School Code's list of positive approaches to behavior management of

35

special needs students.  (Compl. ¶ 31.)

Defendant Wzorek's alleged abusive acts, therefore, should be considered outside the scope of her employment, since they were performed in an outrageous manner and were not actuated by an intent to perform the business of her employer, and therefore her employers can not be held liable for these actions on a theory of *respondeat superior*. Accordingly, Defendants' motions to dismiss will be granted as to Count IX of Plaintiffs' Complaint.

### III.     Count X - Intentional Infliction of Emotional Distress

The Court has delineated above the applicable Pennsylvania law to maintain a cause of action for intentional infliction of emotional distress.  To reiterate briefly, this tort requires outrageous conduct that would arouse resentment against the actor because his actions exceed all possible bounds of decency.  *Strickland*, 700 A.2d at 987.  While the Supervisor Defendants are clearly not as culpable as Defendant Wzorek, their alleged concealment, or at the very least, inactivity, in the face of Celli and Medeiros' repeated warnings, constitutes outrageous behavior.  While it may be that the evidence revealed through discovery will show otherwise, the allegations of the Complaint, and all reasonable inferences to be drawn therefrom, make out a case for intentional infliction of emotional distress against the School District Defendants.  Accordingly, dismissal of Count X is inappropriate at this time.

### IV.     Count XI - Breach of Fiduciary Duty

The court has previously described the applicable law in Pennsylvania to make out a *prima facie* case of breach of fiduciary duty.

The Supervisor Defendants were clearly in an overmastering position in their

relationships *vis-a-vis* the Minor-Plaintiff, and were trusted and depended upon, and indeed carried the obligation, to supervise Defendant Wzorek and insure that the Minor-Plaintiff receive a safe and proper education.  The Supervisor Defendants' alleged actions, or inactions, after being warned by Mses. Celli and Medeiros of Defendant Wzorek's alleged behavior represents a failure to act in the interest of the Minor-Plaintiff, and consequently a breach of the duty imposed by the fiduciary relationship.  Consequently, when viewed in the light most favorable to the Plaintiffs, the Defendants' motions to dismiss this Count must be denied.

> V.     Count XII - Negligence

An employer owes a duty "to exercise reasonable care in selecting, supervising and controlling employees."  *R.A. ex rel. N.A.*, 748 A.2d at 697.  The Supreme Court of Pennsylvania has held that, "[t]o fasten liability on an employer[,] . . . it must be shown that the employer knew or, in the exercise of ordinary care, should have known of the necessity for exercising control of his employee."  *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968) (stating that, in a case in which an employee committed an assault, the employer may be liable for the failure to exercise reasonable care in determining the employee's propensity for violence).

In this case, negligent hiring is not in issue.  Plaintiffs have made no allegation that the School District or NEIU, or any of the Supervisor Defendants, had any knowledge that Defendant Wzorek had a history of abusive or aggressive physical behavior towards students with whom she had come in contact, thus placing them on notice of Wzorek's propensity for this type of behavior, at the time of her hiring.  Thus, dismissal of this Count will be granted to the extent that it states a cause of action for negligent hiring of

Defendant Wzorek.

Once Mses. Celli and Medeiros notified the Supervisor Defendants of Ms. Wzorek's alleged abusive behavior towards the Minor-Plaintiff and other students, however, they were properly put on notice of Wzorek's potential inclination towards behavior of this manner.  Where a plaintiff can establish that a school knew or reasonably should have known of such a propensity, the school will generally be liable for the foreseeable abuse of students by that employee.  *Accord Hutchinson ex rel. Hutchinson v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999).

Accordingly, when viewing all of the alleged facts in the light most favorable to the Plaintiffs, and drawing all reasonable inferences therefrom, dismissal of this Count will be denied to the extent that it states causes of action for negligent supervision and negligent retention.

### D.)  Civil Conspiracy - Count XIV

The ingredients of a cause of action for civil conspiracy were recently summarized in *Goldstein v. Phillip Morris Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004), as follows:

> In order to state a civil action for conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. . . .  Additionally, absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.

*See also McKeeman v. Corestates Bank N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000) (citations and internal quotation marks omitted)

Plaintiffs' Complaint fails to state a cause of action for conspiracy.  The complaint does not aver any overt act on the part of a Defendant to further the alleged common

purpose.  The Plaintiffs argue that the "Defendants unlawfully conspired and agreed to conceal the abuses that transpired in Defendant Wzorek's classroom, and agreed not to initiate an investigation . . . [or to] take action to prevent the harm that Defendant Wzorek was inflicting upon the autistic children, including [RR]."  (Compl. ¶ 167.)  Plaintiffs seem to make the argument that no overt act is required because the alleged conspiracy is one of concealment, thereby contending that inaction by the co-conspirators is sufficient to satisfy the overt act requirement.  However, the case law does not support such a proposition.  The requirement of an overt act is an essential part of the conspiracy law. *Goldstein*, 854 A.2d at 590.  Concealment may be the basis for a conspiracy claim, but only where there has been an overt act to cover up or conceal.  For example, when the Watergate co-conspirators shredded or "deep-sixed" documents, these were overt acts aimed at furthering their common purpose of concealment.  The Complaint does not aver any overt act to cover up or conceal Defendant Wzorek's alleged actions.

Accordingly, Defendants' motions to dismiss this Count will be granted.

## E. Punitive Damages - Counts VIII & XIII

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984).  "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."  *Luddy*, 870 A.2d at 770.  In determining whether punitive damages are warranted in a particular case, "[t]he state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious."  *Id.* at 771.  An appreciation of

the risk is a necessary element of the mental state required for the imposition of punitive damages. *Id.* at 772. As such, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). However, notwithstanding this heightened standard, punitive damages may be awarded based on a cause of action sounding in negligence if the plaintiff is able to show that "the defendant's conduct not only was negligent but that the conduct was also outrageous." *Luddy*, 870 A.2d at 772.

Accordingly, under Pennsylvania law, a punitive damages claim must be supported by evidence sufficient to establish that (1) the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id.* Stated another way, punitive damages will be imposed where the defendant knew or had reason to know of facts which create a high degree of risk of physical harm to another, and deliberately proceeded to act, or failed to act, in conscious disregard of, or indifference to, that risk. *Id.* at 771 (citation omitted).

At this stage of the proceedings, Plaintiffs have made adequate factual allegations to support a punitive damages claim against Defendant Wzorek and the Supervisor Defendants. *See, e.g., DiSalvio*, 158 F.Supp.2d 553, 562 n.10 (quoting (*Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996)). Accordingly, dismissal of Counts VIII and XIII is inappropriate at this juncture.

**CONCLUSION**

For the reasons set forth above, the Court will grant in part and deny in part

Defendants' motions to dismiss as described in detail in the Order that follows.


May __15__, 2007                          _____/s/ A. Richard Caputo_____
                                          A. Richard Caputo
                                          United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THOMAS R. and DAWN R*., as Parents and Natural Guardians of a Minor, R.R.*, | |
| Plaintiffs, | NO. 3:06-CV-01902 |
| v. | (JUDGE CAPUTO) |
| NORTHEASTERN EDUCATIONAL INTERMEDIATE UNIT 19, SUSAN COMERFORD WZOREK, THE SCHOOL DISTRICT OF ABINGTON HEIGHTS, FRED R. ROSETTI, ED.D, CLARENCE LAMANNA, ED.D., DAVID ARNOLD, ED.D., WILLIAM MCNULTY, and MARIELLEN SLUKO, | |
| Defendants. | |

## ORDER

**NOW**, this __15th__ day of May, 2007, **IT IS HEREBY ORDERED** that:

(1)   Defendants' motions to dismiss (Docs. 5, 6, 7) will be **GRANTED in part** and **DENIED in part** as to Count II as follows:

    a.)   **GRANTED** as to the Procedural Due Process claim;

    b.)   **GRANTED** as to the Substantive Due Process claim as it relates to Defendants' failure to provide the Minor-Plaintiff with a free appropriate public education;

    c.)   **DENIED** as to the Substantive Due Process claim as it relates to Defendants' failure to protect the Minor-Plaintiff's bodily integrity;

    d.)   **DENIED** as to the Equal Protection Claim.

(2)   Defendant Susan Comerford Wzorek's motion to dismiss (Doc. 5) is **GRANTED in part and DENIED in part** as follows:

    a.)   **GRANTED** as to Counts VII and XIV;

    b.)   **DENIED** as to Counts I, III, IV, V, VI, and VIII.

(3)     Defendants Northeastern Education Institute Unit 19's (Doc. 6) and the
        School District of Abington Heights' (Doc. 7) motions to dismiss are
        **GRANTED in part and DENIED in part** as follows:

   a.)   **GRANTED** as to Counts IX, X, XI, XII, XIII, and XIV based on these
         local agencies' right to assert immunity from state tort claims and
         punitive damages pursuant to the Pennsylvania Political Subdivision
         Tort Claims Act;
   b.)   **DENIED** as to Counts I and III.


(4)     Defendants Fred R. Rosetti, Ed.D., and Clarence Lamanna, Ed.D.'s motion
        to dismiss (Doc. 6) and Defendants David Arnold, Ed.D., William McNulty,
        and Mariellen Sluko's motion to dismiss (Doc. 7) is **GRANTED in part and
        DENIED in part** as follows:

   a.)   **GRANTED** as to Counts IX and XIV and to Count XII to the extent
         that it states a claim for negligent hiring of Defendant Wzorek;
   b.)   **DENIED** as to Counts I, III, X, XI, XIII, and to Count XII to the extent
         that it states a claim for negligent supervision and negligent retention
         of Defendant Susan Comerford Wzorek.




                          /s/ A. Richard Caputo
                          A. Richard Caputo
                          United States District Judge